[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10030
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cv-01790-GAP-KRS

CORE CONSTRUCTION SERVICES SOUTHEAST, INC.,
a Florida Corporation,
d.b.a. Core Construction,
f.k.a. Southern Gulf West Construction, Inc.,

Plaintiff-Appellant,

versus

CRUM & FORSTER SPECIALTY INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 28, 2016)

Before TJOFLAT, WILLIAM PRYOR and JILL PRYOR, Circuit Judges.

PER CURIAM:

Core Construction Services Southeast, Inc., appeals the summary judgment

in favor of Crum & Forster Specialty Insurance Company. Core Construction, a

general contractor for a condominium development, sued Crum & Forster for allegedly breaching its duties to defend and indemnify Core Construction as an additional insured on a commercial general liability insurance policy issued to its subcontractor, Patnode Roofing, Inc. The district court ruled that Crum & Forster owed no duty to defend or indemnify because the action against Core Construction to recover the costs of repairing and replacing roofing installed incorrectly by Patnode did not constitute "property damage" under the insurance policy. We affirm.

## I. BACKGROUND

After Core Construction relinquished control of the condominium development to a homeowners association, Hurricane Wilma damaged several roofs in the development. The association and its insurer, Empire Indemnity Insurance Company, discovered that the roofing had been installed incorrectly by Patnode. Empire paid for the damages and, in exchange, the association assigned its claims against Core Construction and its subcontractors, including Patnode, to Empire. The assignment provided that it pertained to "the damages and defects sustained by the roofs of . . . 24 buildings" and that it was "restricted to the damages to the roofs . . . arising from [their] faulty construction and development."

Empire sued Core Construction, Patnode, and other subcontractors in a Florida court for negligence, breach of express and implied warranties, and

2

violations of building codes. Core Construction was a named insured on a general commercial liability insurance policy that Crum & Forster had issued to Patnode. Core Construction requested a defense from Crum & Forster, which it refused to provide. Crum & Forster determined that a claim for reimbursement for defective work by Patnode did not constitute "property damage," which its policy defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property." Empire later settled with Core Construction.

In the meantime, Core Construction filed a complaint in the district court that Crum & Forster had breached duties owed Patnode to defend and indemnify Core Construction as an additional insured. Crum & Forster and Core Construction filed cross motions for summary judgment. Crum & Forster argued that Core Construction was not an additional insured. Alternatively, Crum & Forster argued that the claim asserted against Core Construction in the underlying state action did not involve "property damage."

The district court granted the motion of Crum & Forster for summary judgment and denied the motion filed by Core Construction. The district court ruled that, "even assuming *arguendo* that Core Construction was an additional insured under the CGL polic[y]," Crum & Forster was not obligated to defend or indemnify Core Construction in an action that did not involve "property damage," which the Supreme Court of Florida had explained in *United States Fire Insurance*

3

*Co. v. J.S.U.B., Inc.*, 979 So. 2d 871 (Fla. 2007), and *Auto–Owners Insurance Co. v. Pozzi Window Co.*, 984 So. 2d 1241 (Fla. 2008), requires damage to tangible property other than defective work. Empire did not make "any allegations that Patnode's (allegedly faulty) work resulted in 'property damage,' as . . . defined in the 2005 Policy," the district court determined, because the complaint "only asserted that the roofs had been damaged, rather than asserting that the roofs had caused damage to other elements of" the buildings. "Because Crum & Forster had no obligation to defend Core Construction," the district court ruled that the insurer "also has no duty to indemnify . . . ."

## II. STANDARD OF REVIEW

We review *de novo* a summary judgment. *Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294, 1295 n.2 (11th Cir. 2012). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

Core Construction argues that Crum & Forster was obligated to provide a defense in the state action filed by Empire. The complaint in that action, Core Construction contends, alleged that the defective installation of roofing by its subcontractor caused "property damage." Core Construction argues that the district

4

court failed to consider the complaint in conjunction with the written assignment and with documents that described the damage to the condominiums.

In the policy that Crum & Forster issued, "property damage" is defined as "physical injury to tangible property." And we must interpret the language of the policy consistent with Florida law. *See Amerisure*, 673 F.3d at 1300. The Supreme Court of Florida has concluded that "property damage" involves "damage beyond the faulty workmanship or defective work." *J.S.U.B.*, 979 So. 2d at 889. The "faulty workmanship or defective work . . . [must] damage[] the otherwise nondefective completed project." *Id.* As a result, there is no coverage for "property damage" when a claim seeks solely "the costs of repairing and replacing the actual defects in . . . construction." *Id.*

We have held that a claim for the costs to repair and replace a roof was not covered as "property damage" in a commercial liability policy like the one issued by Crum & Forster. *Amerisure*, 673 F.3d at 1306. In *Amerisure*, the insurer for a general contractor assumed the defense in an action by the owner of an inn to recover the costs of repairing and replacing roof tiles that were installed improperly and that later dislodged and damaged other roof tiles. *Id.* at 1296. Because the owner did not allege that the inn suffered any "damage beyond the faulty workmanship" and sought "solely to remedy the installation of a defective component, which . . . [was] the roof *as a whole*," we concluded that the owner's

5

claim did not constitute "property damage" under the commercial liability policy. *Id.* at 1307–09. We reached that conclusion based on the distinction the court had drawn in *J.S.U.B.*, 979 So. 2d at 890, "between a claim for the cost of repairing the subcontractor's defective work, which *is not* covered under a CGL policy, and a claim for repairing the structural damage to the completed project caused by the subcontractor's defective work, which *is* covered." *Amerisure*, 673 F.3d at 1306 (internal citation marks, brackets, and citation omitted).

The complaint that Empire filed against Core Construction alleged a claim for the cost of repairing and replacing a roof that had been installed improperly by its subcontractor. Empire alleged that "the roofs of the condominiums were negligently and improperly constructed" and, due to the companies' negligence in using "deficient and substandard tile installation procedures and practices," Empire had "to repair and replace the roofs of the condominiums resulting in damages in excess of $2,500,000." In its counts for breach of express and implied warranties, Empire alleged that the "defect in the condominiums . . . caused the total loss of the condominiums roofs" and that the companies had been "timely notified of the loss of the condominiums and[, despite being] given the opportunity to honor their warranties," they "failed and refused to" do so. And in its count about the violation of building codes, Empire alleged that it had "been required to repair and replace

6

the latently defective roofs of the condominiums resulting in damages in excess of $2,500,000."

Crum & Forster owed no duty to provide a defense to Core Construction because the complaint against it did not allege a claim for "property damage." Empire failed to allege that the defective installation of roofing caused "physical injury to tangible property" such that there was "damage to the completed project caused by the subcontractor's defective [roofing] work," *Amerisure*, 673 F.3d at 1306, or that the defective work "caused the roof to fail in such a way as to allow the elements to damage other components of the project," *id.* at 1297. Empire, like the owner of the inn in *Amerisure*, "never alleged that any part of the [buildings or development] other than the roof was damaged by the defective roof." *Id.* at 1307.

Core Construction argues that the complaint alleged "property damage" in three ways, but its arguments fail. First, Core Construction argues that the complaint "alleged [there] was a catastrophic total loss . . . of the condominiums," but the complaint alleged that there was a "total loss of the condominiums roofs" and that the "repair and replace[ment of] the roofs of the condominiums result[ed] in damages." Although Empire alleged that it gave "timely notice of the loss of the condominiums," as the district court stated, that "language is too vague" to allege damage independent of the repair and replacement of the roofs. Second, Core Construction argues that the written assignment that Empire attached to the

7

complaint "establish[ed] that the alleged roof defects not only caused, but increased, other storm damage," but the assignment was explicitly "restricted to the damages to the roofs . . . arising from [their] faulty construction and development." Third, Core Construction argues that "Empire's reference to [expert reports and other] documents establish[ed] . . . additional property damage," but Empire alleged that it "provided copies of" the documents to the companies in an unsuccessful attempt to resolve the dispute. It was not enough, as Core Construction and its amici contend, for the complaint to "indicat[e] there may have been covered damage," because "an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured . . . ." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004); *see Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005).

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Crum & Forster.